UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **DIANE CARDEN,**<br>    Plaintiff,<br><br>v.<br><br>**SPRINGFIELD MORTUARY SERVICE INC.,** *et al.***,**<br>    Defendants. | **Case No. 4:23-cv-1053-CLM** |

# MEMORANDUM OPINION

Diane Carden's son died in Missouri. Carden arranged to have her son's body returned in time for his funeral. But various errors resulted in his body's late arrival—in a state of decomposition. Carden sues multiple defendants involved in the transport for outrage, negligence/wantonness, and negligent/wanton hiring, training, and supervision.

Each defendant answered Carden's complaint, except one: Springfield Mortuary Service, Inc. [1] Springfield moves to dismiss the claims against it for lack of personal jurisdiction and improper venue.

For the reasons stated within, the court **DENIES** Springfield's motion. (Doc. 21). In the alternative, Springfield moves to transfer venue to the Western District of Missouri. (*Id.*) The court **DEFERS RULING** on transfer pending a status conference with the parties.

---

[1] The court identified a motion to dismiss within Southwest's answer (doc. 25) and set a briefing schedule on that motion, ordering Southwest to file a separate motion that complies with this court's Rules. (Doc. 28). Southwest did not respond, so the court considers its motion forfeited. The only motion to dismiss before the court now is Springfield's.

# BACKGROUND

### A. The delayed transport

Michael Ryan Akins passed away on October 2, 2021, in Springfield, Missouri. His mother, Diane Carden, lives in Alabama and wished her son to be buried in Alabama a week later. So Carden arranged with a local funeral service, Alabama Cremation and Funeral Services, LLC ("Alabama Cremation"), to ensure that her son was returned in time for an open-casket funeral one week later (October 9).

Alabama Creation contracted with the Defendants, Inman Shipping Worldwide, LLC ("Inman Shipping"), Eagle's Wings Air, LLC ("Eagle's Wings"), Southwest Airlines, Co. ("Southwest"), and Springfield Mortuary Service, Inc. ("Springfield"), to ensure Akins' body was properly preserved and transported. On the morning of the funeral, Southwest was to fly Akins' body to Alabama, with the plane departing from Kansas City at 6:05 AM and landing in Birmingham at 10:50 AM. Springfield and Inman Shipping were to deliver the body to the airport no more than 12 hours before takeoff.

Unfortunately, someone delivered Akins' body to the airport three *days* before the flight. And Southwest or Eagle's Wings accepted Akin's body nearly three days early even though they lacked proper storage. Realizing that it possessed a corpse that it could not properly store, Southwest called Springfield to retrieve Akin's body. But Springfield never answered. So Southwest ultimately loaded Akin's improperly stored body onto a plane on October 9th. But Akins' body didn't arrive in Birmingham until October 11—two days after the scheduled funeral.

So Carden had to reschedule her son's funeral multiple times. When she finally received her son, his body had significantly decomposed. It had turned color and was bulging, swollen, and blistering. It also produced a strong, foul odor.

### B. The lawsuit

Carden sued Springfield, Southwest, Inman Shipping, and Eagle's Wings for Negligence/Wantonness, Outrage, and Negligent/Wanton Hiring, Training, and Supervision. Because none of these defendants reside in Alabama, and Carden seeks more than $75,000 in damages, this court has diversity jurisdiction under 28 U.S.C. § 1332. Springfield, however, challenges (1) the court's personal jurisdiction over it, and (2) venue being proper in the Northern District of Alabama. (Doc. 21).

## STANDARD OF REVIEW

When considering a Rule 12 motion, the court accepts the allegations in the plaintiff's complaint as true and views them in the light most favorable to the plaintiff. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012); *see also Moore v. Cecil*, 488 F. Supp. 3d 1144, 1155 (N.D. Ala. 2020). If the facts as pleaded could give rise to an entitlement of relief, then the court must deny the defendant's motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). If, however, the court accepts the pleaded facts as true, and the plaintiff "still would not be entitled to relief, the court must grant the motion." *Moore*, 488 F. Supp. 3d at 1155.

To survive a Rule 12(b)(2) motion to dismiss, "the plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002) (footnote omitted). A prima facie case of personal jurisdiction "is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Id.* (quoting *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990). Similar to a 12(b)(2) standard, to survive a 12(b)(3) motion to dismiss, the plaintiff has the burden of establishing a prima facie showing of venue. *Home Ins. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990). When deciding either motion, the court looks to the factual allegations in the plaintiff's complaint and takes the facts as true "to the extent they are uncontroverted by defendants' affidavits." *Id.*

## DISCUSSION

**1. Personal Jurisdiction**

Springfield is based in Missouri and does business in Missouri. Springfield argues that this court lacks personal jurisdiction over it because Springfield did not conduct any actions, or make any omissions, related to Carden's case in Alabama. (Doc. 21 at 6).

**A. Legal standard**

"[A] federal court generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant. First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. Second, if the court determines that the forum state's long-arm statute has been satisfied, it must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022) (citations omitted). Fortunately, these inquiries merge because Alabama's long-arm statue grants jurisdiction over nonresidents to the fullest extent allowed by the Due Process Clause of the Fourteenth Amendment. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007); *see also* Ala. R. Civ. P. 4.2. So the question is whether exercising personal jurisdiction over Springfield would violate the Fourteenth Amendment's Due Process Clause.

"At bottom, due process prohibits the exercise of personal jurisdiction over a nonresident defendant unless its contacts with the state are such that it has a fair warning that it may be subject to suit there." *Del Valle*, 56 F.4th at 1275 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021)). A nonresident defendant's contacts with a state can be evaluated one of two ways: "(1) the plaintiff can show that the defendant has continual and systematic contact with the State (*i.e.* 'general jurisdiction'), or (2) the plaintiff can establish a substantial connection between the conduct at issue and the

state where the lawsuit was filed (*i.e.* 'specific jurisdiction')." *Moore*, 488 F. Supp. 3d at 1156. The parties (and court) agree that general jurisdiction is lacking because Springfield does not have continual and systematic business in Alabama.

So Carden must show specific jurisdiction. When looking for specific jurisdiction, courts examine "whether (1) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state; (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *Del Valle*, 56 F.4th at 1275. Carden must plead enough facts to establish the first two elements. *See id.* If she does, Springfield must then "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quotation marks omitted).

### B. Carden's claims

Carden pleads three state-law claims against Springfield: Count I alleges Negligence/Wantonness (doc. 16, ¶¶ 37-43); Count II alleges Outrage (¶¶ 44-50); and, Count III alleges Negligent/Wanton Hiring, Training, and Supervision. (¶¶ 51-55). The court starts with Count II (outrage) so that it can then group the negligence-based claims.

o **Count II: Outrage**

In Alabama, the tort of outrage punishes conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Wilson v. Univ. of Alabama Health Servs. Found., P.C.*, 266 So. 3d 674, 677 (Ala. 2017) (quoting *Horne v. TGM Assocs., L.P.*, 56 So.3d 615, 631 (Ala. 2010)). The state supreme court has recognized that wrongful conduct in the family-burial context may constitute tortious outrage. *See Whitt v. Hulsey*, 519 So. 2d 901 (Ala. 1987).

In short, Carden alleges that Springfield agreed to preserve and store her son's body in Missouri, then ensure that it was transported to Alabama, but failed so outrageously that a reasonable person would find Springfield's conduct to be atrocious and utterly intolerable. *See Wilson*, 266 So. 3d at 677.

Again, the court has specific personal jurisdiction over this claim if (1) it arises out of or relates to Springfield's contact with Alabama; (2) Springfield purposefully conducted business in Alabama; and, (3) it would not violate fair play and substantial to force Springfield to litigate in Alabama. *Del Valle*, 56 F. 4th at 1275. Carden has the burden for the first two elements; Springfield bears the third (if applicable).

### a. Relatedness

Under the first element, Carden's outrage claim arises from and relates to Springfield's contact with Alabama. Carden alleges that Springfield agreed to work *with an Alabama-based funeral home* (Alabama Cremation and Funeral Services LLC) to ensure that Akin's body was returned *to Alabama*. (Doc. 16, ¶¶ 15-18). If Carden had not agreed *with an Alabamian* to preserve then ship Akin's body *to Alabama*, then the alleged outrageous conduct (*i.e.*, the late return of a corpse suffering from odor, swelling, and advanced decomposition) would not have occurred. *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018) ("a tort 'arise[s] out of or relate[s] to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort"); *see also SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1230 (11th Cir. 2023).

### b. Purposeful Availment

Under the second element, the same alleged facts establish that Springfield purposefully availed itself of the privilege of doing business in Alabama. There are two ways to show that a defendant purposefully availed itself within the forum state: the "effects" test and the minimum contacts test. *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013). Carden

need pass only one test to satisfy specific personal jurisdiction. *SkyHop Techs., Inc.*, 58 F.4th at 1230. She does under the *Calder* "effects" test.

The *Calder* "effects" test requires that three things be shown: the tort "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Louis Vuitton*, 736 F.3d at 1356 (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1285-88 (11th Cir. 2008)). Carden pleads facts that would show all three. First, Carden alleges that Springfield intended to preserve then ship Akin's body to Alabama. Second, the shipping of Akin's body to Alabama for a funeral in Alabama shows that Springfield aimed its conduct at Alabama. And third, Springfield should have expected that failing to properly and timely ship Akin's body to Alabama for a funeral in Alabama would cause outrage in Alabama.

—

For these reasons, Carden has met her burden of establishing the first two elements of specific personal jurisdiction. *Del Valle*, 56 F.4th at 1275. The burden now shifts to Springfield to make a "compelling case" that the court's exercise of jurisdiction would not violate traditional notions of fair play and substantial justice. *Id.*

### c. Fair Play and Substantial Justice

To determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice, the court considers "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the interstate judicial system's interest in resolving the dispute." *Id.* at 1277 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quotation marks omitted)). Springfield makes no argument under this test, so it has waived any argument that defending the claims in the Northern District of Alabama would offend traditional notions of fair play and substantial justice. *Id.* at 1275; (Doc.

29, p. 10). Nor would the court be likely to agree with any such argument, as Carden has a significant interest in obtaining convenient and effective relief in Alabama, where she resides.

—

For these reasons, the court finds that it has personal jurisdiction over Springfield for Count II (state-law outrage).

- o **Counts I and III (negligence and wantonness)**

Carden's other claims against Springfield are based in negligence and wantonness: Count I focuses on Springfield's negligent and wanton conduct related to the treatment of Akin's body, and Count III focuses on Springfield's negligent and wanton training of persons who mishandled Akin's body.

Having personal jurisdiction over Springfield for Count II doesn't necessarily vest personal jurisdiction over Springfield for Counts I and III. A federal statute, 28 U.S.C. § 1367, governs the exercise of supplemental *subject matter* jurisdiction but does not address supplemental or pendent personal jurisdiction. *Id.* So the court must look to Eleventh Circuit precedent to see if pendent personal jurisdiction exists. *See* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1069.7 (4th ed.).

Eleventh Circuit law on the issue is sparse, but the rule appears to be that "personal jurisdiction over one individual claim cannot be expanded to cover other related claims unless the claims 'arose from the same jurisdiction generating event.'" *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed. Appx. 779, 788 (11th Cir. 2014) (quoting Cronin v. Wash. Nat'l Ins. Co., 980 F.2d 663, 671 (11th Cir. 1993)). As explained, Springfield's agreement to preserve and ship Akin's body to Alabama, followed by the actual shipment of Akin's body to Alabama, established specific personal jurisdiction for Count II. Counts I and III arise from the same events because both depend on proving that Springfield or its agents

negligently or wantonly preserved and shipped Akin's body to Alabama. So the court finds that it has pendent jurisdiction over Counts I and III.

—

To sum up, the court has personal jurisdiction over Springfield for Counts I, II, and III. So the court will **DENY** Springfield's motion to dismiss for lack of personal jurisdiction.

## 2. Dismissal because of Improper Venue

Springfield next argues that the court should dismiss Carden's complaint under Rule 12(b)(3) because the Northern District of Alabama is an improper venue. (Doc. 21, pp. 8-10).

### A. Applicable law

To begin, 28 U.S.C. § 1391(b) provides that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55-56 (2013). Rule 12(b)(3) and 28 U.S.C. § 1406(a) permit dismissal of a complaint only when venue is "wrong" or "improper." *Id.* at 55. As the Supreme Court put it:

> Section 1406(a) provides that '[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.' Rule 12(b)(3) states that a party may move to dismiss a case for 'improper venue.' These provisions therefore authorize dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought."

*Id.*

So when venue is challenged, the court must first determine whether the case falls into one of § 1391(b)'s categories. If it does, venue is proper. If not, venue is improper, meaning the case must then be dismissed or transferred under § 1406(a). *Id.* at 56. "A plaintiff has the burden of showing that venue in the forum is proper." *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1289–90 (N.D. Ala. 2016).

### B. The Northern District of Alabama is a Proper Venue.

1. Section 1391(b)(1): Under § 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Carden says venue is proper because (a) the court has personal jurisdiction over Springfield and (b) the other defendants waived personal jurisdiction which establishes residency for purposes of venue. (Doc. 29, pp. 12, 13).

To determine residency of corporations for purposes of 28 U.S.C. § 1391(b)(1), courts look to § 1391(c)(2), which states a corporation "shall be deemed to reside, if a defendant, in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C § 1391(c)(2). And a party waives the right to dispute personal jurisdiction "if the party fails to assert that objection in its first Rule 12 motion, other responsive pleading or general appearance." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 n.21 (11th Cir. 2009) (citing Fed. R. Civ. P. 12(h)).

At present, it is unclear whether all parties have waived personal jurisdiction (*see* Doc. 16, p. 4, ¶ 13; Doc. 22, p.3, ¶ 13; Doc. 23, p. 3, ¶ 13), and the parties have not fully briefed this issue. Because § 1391(b) is disjunctive, the court turns to § 1391(b)(2) to determine whether the Northern District of Alabama is a proper venue, rather than speculate about the applicability of § 1391(b)(1).

2. Section 1391(b)(2): Venue is proper under § 1391(b)(2) in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…." 28 U.S.C. § 1391(b)(2). Under § 1391(b)(2), when evaluating where a substantial part of the events or omissions giving rise to a claim occurred, "the Eleventh Circuit has made clear that '[o]nly the events that directly give rise to a claim are relevant' and that 'only those acts and omissions that have a close nexus to the wrong' are properly weighed in the 'substantial part' analysis." *Morgan v. N. MS Med. Ctr., Inc.*, 403 F. Supp. 2d 1115, 1123 (S.D. Ala. 2005), *aff'd sub nom. Morgan v. N. Mississippi Med. Ctr., Inc.*, 225 F. App'x 828 (11th Cir. 2007) (citations omitted). In fact, under § 1391, a plaintiff "does not have to select the venue with the *most* substantial nexus to the dispute, as long as she chooses a venue where a substantial part of the events giving rise to the claim occurred." *Id.* at 1122 (finding Alabama a proper venue under § 1391(b)(2) because the plaintiff relied heavily on Alabama events to prove his claim, even though part of the events occurred in Mississippi). The burden of "showing that venue in the forum is proper" remains with Carden. *In re Blue Cross*, 225 F. Supp. 3d at 1289–90.

Springfield argues that the Northern District of Alabama is an improper venue under § 1391(b)(2) because it says a substantial part of the events or omissions giving rise to the claim occurred in Missouri, not Alabama. According to Springfield, the decedent was injured and passed away in Missouri, his remains were taken into possession, embalmed, prepared for shipping, transported, and scheduled for a flight in Missouri, and his body allegedly remained at the airport in Missouri for three days. (Doc. 21, pp. 9-10). Of course, this is true; many of the relevant events—perhaps even most of the events—happened in Missouri.

But Carden says venue is proper in Alabama because a substantial part of the events that led to this case happened in Alabama. The court agrees. To demonstrate, here are the elements the court would explain when instructing jury on the tort of outrage:

> (1) the defendant intended to cause plaintiff emotional distress, or the defendant should have known that his its conduct was likely to caused plaintiff emotional distress;
>
> (2) the defendant's conduct was extreme and outrageous, in which it goes beyond all bounds of human decency, and it is regarded as atrocious and utterly intolerable in a civilized society;
>
> (3) that the defendant's intentional or reckless conduct caused plaintiff emotional distress; and
>
> (4) that plaintiff's emotional distress was so severe that no reasonable person could be expected to endure it.

Ala. Pattern Jury Instruction Civil 29.03 (3d ed. 2021). The first two elements require evidence of Springfield's conduct in Missouri. But the last two elements require evidence of events that happened in Alabama.

So what relevant events occurred in Alabama? Carden says from October 6 to October 9, she had phone calls in Alabama with Springfield concerning the preservation and transportation of the decedent's remains after her son's remains were delivered to the airport three days early and were "rapidly deteriorating." (Doc. 16, p. 7, ¶¶ 31-32). She then waited on the body in Alabama for two days, from October 9 when the body was loaded onto the airplane until October 11, when her son's remains finally arrived. (Doc. 16, p.p. 7-8, ¶¶ 33-34). Then when they did arrive, Carden discovered they were in a state of advanced decomposition: the body was "bulging, swollen, turning colors, and beginning to blister." (Doc. 16, p. 8, ¶ 35). And Springfield knew its conduct would directly impact an Alabama resident; Springfield's services were arranged and paid for in Alabama; Springfield spoke directly with Carden in Alabama multiple times; and Carden was injured by Springfield's tortious conduct in Alabama. (Doc. 29, pp. 14-15) (citing *Mobile Diagnostic Imaging, Inc. v. Gormezano*, No. 12-60888-civ, 2012 WL 3244664, at *2 (S.D. Fla. Aug. 9, 2012) (referencing

cases holding that "substantial events occurred within a venue when harm or injury was suffered in that venue")).

These Alabama-based events bear a "close nexus" to Springfield's conduct and directly give rise to her claims. *See Morgan*, 403 F. Supp. 2d at 1123; (Doc. 29, p. 8). And thanks to Carden's burden of proof, these Alabama-based events will figure prominently at trial—*i.e.*, the jury must determine whether Springfield caused Carden's emotional distress in Alabama and whether the Alabama-based distress was so severe that no reasonable person could be expected to endure it. *See* 2 Ala. Pattern Jury Instructions Civil 29.03 (3d ed. 2021). So even if a substantial part of events giving rise to Carden's claims occurred in Missouri, a substantial part of relevant events also happened in the Northern District of Alabama, making venue proper here under § 1391(b)(2). *See Morgan*, 403 F. Supp. 2d at 1123. The court will therefore **DENY** Springfield's motion to dismiss because of improper venue.

### 3. Transfer Under § 1404(a)

Last, Springfield argues that, in lieu of dismissal, the court should transfer this case to the Western District of Missouri under 28 U.S.C. § 1404(a). (Doc. 21, pp. 10-14). The parties have briefly addressed arguments for and against transfer, but the court requires more facts to determine the most appropriate venue.

So the court **SETS** a telephone status conference[2] for **Wednesday, September 11, 2024, at 2:00 PM CDT**, during which the parties should be prepared to present arguments on these factors:

(1) the convenience of the witnesses;

(2) the location of relevant documents and the relative ease of access to sources of proof;

(3) the convenience of the parties;

---

[2] The parties jointly moved to amend the scheduling order on June 21, 2024. (Doc. 37). The parties should also be prepared to discuss this motion with the court during the telephone conference.

(4) the locus of operative facts;

(5) the availability of process to compel the attendance of unwilling witnesses;

(6) the relative means of the parties;

(7) a forum's familiarity with the governing law;

(8) the weight accorded a plaintiff's choice of forum; and

(9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

## CONCLUSION

For the reasons stated within, the court **DENIES** Springfield's motion to dismiss for lack of jurisdiction and improper venue. (Doc. 21). The court withholds ruling on Springfield's alternative motion to transfer under 28 U.S.C. § 1404(a).

The court will conduct a telephone status conference on **Wednesday, September 11, 2024, at 2:00 PM CDT** to discuss whether the court should transfer the action to the Western District of Missouri. The court will enter a separate order that contains the dial-in information for this conference.

**Done** on September 3, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE